JOURNAL ENTRY and OPINION
Defendant-appellant Timothy Fisher appeals from the divorce decree entered by the domestic relations court. He contends that the in-court settlement agreement between the defendant and plaintiff-appellee Susan Fisher was improperly modified by the magistrate and adopted by the trial court; and, that the trial court erred by failing to attach a child support worksheet to its journal entry. We find no merit to the appeal, and affirm.
The parties were married on August 15, 1985, and had two children, Jamie (DOB: 5-6-90) and Eric (DOB: 6-6-91).
On April 29, 1997, the plaintiff filed her complaint for divorce. Defendant filed his answer and counterclaim, and hearings were conducted before a magistrate on March 23-26, 29-30, April 28-29, and May 3, 1999.[1]
A review of the March 29, 1999 transcript indicates that discussions were had off the record about an agreement regarding division of the marital property. The value of the marital property totaled approximately $200,000. The defendant was to pay the plaintiff $60,000 for her interest in the equity of the marital home. He was also to pay the plaintiff $37,500 for the remainder of her interest in the marital property.
It was clear that the parties agreed that the plaintiff would quit claim her interest in the marital home to the defendant and in exchange he would give plaintiff a mortgage and a promissory note for the $60,000 amount. However, there was no agreement as to when the mortgage would be given to the plaintiff. Defendant wanted the mortgage to be given to the plaintiff after he refinanced the home in order to better his chances at refinancing. The plaintiff wanted the mortgage placed on the property prior to refinancing so that when the property was refinanced, she would immediately receive her $60,000 payment. At the conclusion of the hearing, the issue was still not resolved because plaintiff's counsel, in apparent frustration, left.
The parties also agreed that the defendant was to pay the plaintiff $37,500 for her remaining interest in the marital property. It was agreed that the amount was to be paid over three years in twelve equal quarterly installments of $3,125 commencing on September 30, 1999. The issue regarding securing these payments was brought up by plaintiff's counsel, but the magistrate deferred discussing the issue until later. The issue, however, was never resolved at the March 29, 1999 hearing.
No mention was made at this hearing regarding the division of the personal marital property.
The next day, March 30, 1999, the magistrate raised concerns regarding whether certain items of the agreement were adequately addressed. Specifically, the magistrate stated that the security for the $37,500 payment and the timing of the filing of the $60,000 mortgage were not adequately articulated. The magistrate placed on the record that off-the-record discussions on these issues took place and that she failed to accurately state the resolution of the issues on the record.
The magistrate then indicated that the agreement regarding the mortgage of $60,000 was that it was to be filed prior to the refinancing of the property so that the plaintiff would be immediately paid. The defendant's counsel adamantly objected to this provision and refused to agree to it.
The magistrate also indicated that defendant's counsel had suggested that the court retain jurisdiction over the property division in the event that the defendant failed to obtain the refinancing. The magistrate indicated that the only way the court could force the defendant to refinance was to order that in the event he failed to do so, the property was to be sold.
The parties were unable to resolve the issue regarding securing the $37,500 amount.
At the March 30, 1999 hearing, the magistrate also indicated that no agreement was reached regarding the division of the personal property. The defendant indicated that plaintiff's list of items she wanted was lengthy but that he was open to discussion. The magistrate stated that this could be done off the record.
On May 3, 1999, the parties again convened in order to discuss their impasse on the marital property division. Apparently, further discussions regarding settlement were held a few days prior to this hearing. We do not have a transcript of what transpired at the prior meeting, but it was apparently agreed that plaintiff's counsel was to have attempted to draft the settlement agreement. As of May 3, 1999, she had not done so because her client did not agree to the terms until that morning.
Defendant's counsel then placed on the record what was agreed upon. He stated that simultaneously with plaintiff's issuing her quit claim deed in the marital home, a mortgage would be recorded. Nothing was stated, however, regarding whether the mortgage would be filed prior to or after the refinancing was obtained.
Defendant's counsel also stated that it was agreed that, upon nonpayment of the $37,500 amount, a self-executing judgment would issue which would permit the plaintiff to file a motion to show cause upon nonpayment. There seemed to be no disagreement regarding these terms.
Defendant's counsel insisted on a signed agreement as to the marital property division before the magistrate took testimony regarding child support. Since plaintiff's counsel's secretary was on vacation and because plaintiff's counsel refused to type out an agreement with all parties present using the magistrate's computer, the magistrate agreed to attempt to draft an agreement at a later date, and evidence was then taken regarding support payments. No mention was made on the record regarding the division of the personal property.
The record before us does not reveal whether the parties signed the magistrate's draft of the separation agreement nor does the magistrate's draft appear in the record.[2]
In her report, the magistrate indicated that the parties agreed on the record to the division of marital property. In pertinent part, the magistrate found:
 Defendant is awarded Plaintiff's interest in the real estate located at 10638 Devonshire Drive, North Royalton, Ohio. He shall be solely responsible for, and shall hold Plaintiff harmless as to, all expenses and debts associated with such property including, but not limited to, the first mortgage held by Charter One, the second mortgage held by Metropolitan, real estate taxes, home owners insurance, maintenance and repairs.
 Plaintiff shall execute and deliver to Defendant a quit claim deed to said property as soon as practicable. Defendant shall execute and deliver to Plaintiff a promissory note and mortgage in the amount of $60,000 to secure her interest in the real estate as soon as practicable. Said quit claim deed and mortgage shall be filed of record contemporaneously.
 Defendant shall refinance the mortgage and home equity line presently encumbering the property and remove the plaintiff's name from said obligation. Defendant shall pay plaintiff the sum of $60,000 as property division from the proceeds of refinancing. In the event Defendant fails to refinance, then the property will be sold. From the net proceeds of the sale Plaintiff shall be paid $60,000 and the balance paid to the Defendant. (Mag. Report at 11-12).
* * *
 Defendant shall pay to Plaintiff as lump-sum division of property the sum of $97,500. The sum of $60,000 will be paid out of the proceeds of the refinanced mortgage of the Devonshire property within 90 days of the delivery into escrow of the quit claim deed by Plaintiff. The balance of $37,500 shall be paid in twelve equal quarterly installments of $3,125 commencing September 30, 1999 and continuing each quarter thereafter until paid in full. All such payments shall be made directly to the Plaintiff. The lump-sum provided for herein shall be due and payable to Plaintiff in all events, whether or not Plaintiff or Defendant dies before payment of the full amount and whether or not Plaintiff remarries prior to the payment in full thereof and regardless of any change in the financial circumstances of either party. The balance due on the obligation imposed upon Defendant by the terms of this paragraph shall constitute a charge against estate of Defendant in the event of his death before the payment thereof in full. * * *. (Mag. Report at 13-14).
* * *
 All household furniture, furnishings and appliances shall be divided from a list prepared by the parties, implemented as follows: party who wins a coin toss shall select an item from the list, thereafter parties shall alternate selections from said list. If both parties agree, furniture shall be divided by groupings, e.g. bedroom suite consisting of bed, box springs, mattress, dresser, night stand etc. The list shall include items removed by plaintiff from the marital residence except for personal items, but shall not include separate property. (Mag.
Report at 17).
The magistrate adopted the parties' shared parenting plan and ordered that the defendant pay $541 per month per child for child support.
Both parties filed objections to the magistrate's report. The trial court adopted the magistrate's report, except for the calculation of child support. The trial court found that based on the amount of time defendant would be spending with the children, his child support obligation should be decreased to $450 per month per child.
The defendant appeals from the trial court's order and assigns two assignments of error.
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT UNILATERALLY DISREGARDED THE PARTIES' MARCH 29, 1999, IN-COURT AGREEMENT AND ISSUED A JUDGMENT ENTRY OF DIVORCE WHICH CONTRADICTS AND MODIFIES THE SPECIFIC TERMS OF THE IN-COURT AGREEMENT.
Defendant contends that the magistrate improperly modified the settlement agreement by adding that if the the defendant failed to refinance the home, the home was to be sold. Defendant also contends that the magistrate improperly added that any amount remaining unpaid would be charged against the defendant's estate. Finally, the defendant argues that the magistrate erred in adding language regarding the division of the personal property and that the division would proceed by an alternating coin toss.
Although defendant argues that a binding agreement was entered into the record at the March 29, 1999 hearing, we find that although the parties agreed on some issues, there was disagreement as to how the defendant's obligation to pay the plaintiff for her $97,500 interest in the marital property was to be secured. The issue was not resolved at this hearing nor the March 30 hearing, but the magistrate stated at the May 3, 1999 hearing that she would attempt to draft an agreement. The record is silent as to what transpired after this proposal.
Nonetheless, we find that defendant's argument regarding modifications of the agreement surrounding the refinancing of the home to secure payment for plaintiff's $60,000 interest is moot because pending appeal, the plaintiff issued her quit claim deed and has received the $60,000 payment in exchange.[3] Although the defendant contends evidence of what occurred pending appeal constitutes evidence outside the record, we note that an event that causes a case to be moot may be proved by extrinsic evidence outside the record. Pewitt v. Lorain Correctional Inst. (1992),64 Ohio St.3d 470, 474.
We find no error regarding the added language stating that any unpaid portion of the $97,500 debt would be charged against the defendant's estate. This language did not materially change the agreement, because the unpaid amount would be charged against the defendant's estate as a debt even without the language. See, In Matter of the Estate of Rita A. Harsh, Deceased (Apr. 7, 1994), Coshocton App. No. 93 CA 10, unreported.
Finally, as to the language added regarding the manner in which the personal property was to be divided, we find nothing on the record regarding an agreement concerning the division of the personal property. The defendant merely indicated that he was open to discussion on dividing the items and the magistrate indicated that such discussion would be had off the record. Since we have no evidence of what was discussed, we presume that the magistrate adequately set forth the parties' agreement on this issue.
We find no error in the trial court's adopting the magistrate's report regarding the division of the marital property.
Defendant's first assignment of error is overruled.
 II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ORDERED CHILD SUPPORT WITHOUT COMPLETING AND INCORPORATING A CHILD SUPPORT GUIDELINES WORKSHEET AS PART OF ITS JUDGMENT ENTRY.
Defendant contends that because the trial court modified his child support obligation, the court was obliged to attach a child support worksheet.
We find that the trial court did in fact attach a child support worksheet to its journal entry. The worksheet was the same worksheet used by the magistrate in calculating the support obligation. We do not find that the trial court had to attach a new support worksheet, because the trial court was using its discretion in deviating from the amount calculated on the sheet, based on equitable principles.
R.C. 3113.215(B)(6)(a) and (b) state in pertinent part:
 If the court issues a shared parenting order in accordance with section 3109.04 of the Revised Code, the court shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in division (E) of this section, through line 24, except that, if the application of the schedule and the worksheet, through line 24, would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in division (B)(3) of this section, the court may deviate from the amount of child support that would be ordered in accordance with the schedule and worksheet, through line 24, shall consider those extraordinary circumstances and other factors or criteria if it deviates from that amount, and shall enter in the journal the amount of child support calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet, through line 24, its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination.
(b) For the purposes of this division, extraordinary circumstances of the parents includes, but is not limited to, all of the following:
 (i) The amount of time that the children spend with each parent; * * *. (emphasis added).
We find the trial court complied with these provisions. The trial court attached the magistrate's worksheet which calculated the amount through line 24 and totaled the parties' respective child support obligations. The trial court in its journal entry then stated that it was deviating from that amount because:
 * * * the amount of child support calculated on the Child Support Worksheet would be unjust or inappropriate to Defendant and it would not be in the best interests of the minor children because under the terms of the shared parenting plan both parents have approximately equal time with the children. The Court finds it is not appropriate to do a dollar-for-dollar offset of Plaintiff's child support obligation against the Defendant's child support obligation as if the Court were using a split custody worksheet. However, some deviation is appropriate because the living expenses of the Plaintiff's residence for food and entertainment of the minor children are less than if she had possession of the children under a more traditional visitation order. The court finds that Defendant's child support obligation should be set at $450.00 per month per child.
(May 5, 2000 Divorce Decree at 3-4).
Therefore, because the trial court stated its reasons for deviating from line 24 on the attached worksheet, it did not err by failing to attach a new worksheet that would simply enter the same calculations as the magistrate. The statute merely requires the court to state in its journal entry the reasons for deviating from the calculated amount in the worksheet.
Although we note that this court in Koucheki v. Koucheki (July 6, 2000), Cuyahoga App. No. 76537, unreported, held that the trial court must attach a new child support worksheet every time it modifies the magistrate's child support recommendation, we find in the present case, the failure to do so constitutes harmless error. In this case, the trial court would have simply placed the exact same information on the sheet as the magistrate. Therefore, requiring the trial court to rewrite the same information on a different worksheet would not be in furtherance of judicial economy and would elevate form over substance.
Defendant's second assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellants her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Domestic Relations Division of the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________________________ COLLEEN CONWAY COONEY, JUDGE:
TIMOTHY E. McMONAGLE, P.J. and JOSEPH J. NAHRA, J.,* CONCUR
* Judge Joseph J. Nahra, Retired, 8th Appellate District, Sitting by Assignment
[1] The transcripts from the April 28-29, 1999 hearings were not filed with this court.
[2] We cannot take into consideration the letters attached to the plaintiff's response brief, as such evidence was not in the record.
[3] Defendant's counsel did concede during oral argument that this issue is now moot.